**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DAVID GIBSON,**

        **Plaintiff,**

**-vs-**                                            **Case No. 6:09-cv-753-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

**MEMORANDUM OPINION & ORDER**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda[1] submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability and disability insurance benefits on May 9, 2005. R. 81-83. He alleged an onset of disability on June 1, 2004, due to depression, neck, back, shoulder, and left knee pain. R. 29, 32, 122, 163, 586-88, 597-99. His date of last insured is December 31, 2005.

---

[1]Plaintiff's memorandum was notable for its clear and cogent presentation.

R. 14. His application was denied initially and upon reconsideration. R. 42-48. Plaintiff requested a hearing, which was held on October 6, 2008, before Administrative Law Judge Joseph A. Rose (hereinafter referred to as "ALJ"). R. 566-625. In a decision dated December 8, 2008, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-25. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 6. The Appeals Council denied Plaintiff's request on February 27, 2009. R. 6-9. Plaintiff filed this action for judicial review on May 4, 2009. Doc. No. 1.

### B. Medical History and Findings Summary

At the time of the hearing, Plaintiff was fifty years of age, and had completed high school and one year of college. R. 81, 571-572. Prior to June 1, 2004, the date he last worked, Plaintiff had been employed as a truck driver, mainly in the construction industry, for approximately twenty-five years. R. 109, 187.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of depression, neck, back, shoulder, and left knee pain. R. 29, 32, 122, 163, 586-88, 597-99. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from lumbar degenerative disc disease; cervical spine disorder; left knee disorder; bilateral shoulder disorder; and major depressive disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16-18. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a range of sedentary work with the following additional restrictions: sit six hours with frequent positions changes; occasional performance of overhead reaching with his left shoulder; occasional performance of pushing, pulling, bending, stooping, crawling, climbing, and manipulation of small objects; avoidance of all environmental hazards such as unprotected heights and moving machinery;

understand, remember, and carry out simple 1 or 2 step routine repetitive tasks; and work in a low stress job, defined as having only occasional decision making and occasional changes in the work setting. R. 20.

Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 23. Considering Plaintiff's vocational profile and RFC, and based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a surveillance system monitor, food and beverage order clerk. R. 24. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 25.

Plaintiff now asserts four points of error. First, he argues that the ALJ erred in assessing his RFC in light of the Veterans Administration's determination that he was 100% disabled and in light of consulting examiner opinions. Second, he argues that the ALJ erred by giving the VE an inaccurate hypothetical. Third, Plaintiff contends the ALJ erred by filing to apply the appropriate pain standard. Fourth, he argues that the ALJ erred in evaluating his credibility. Because the Court finds the ALJ erred in failing to properly consider the VA's disability determination (and corresponding medical records on which it was based), and **REMAND** is required, it is unnecessary to reach the remaining issues raised by Plaintiff.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

**A.     Veterans Administration Disability Rating**

Plaintiff contends that the ALJ erred by failing to adequately address the disability rating from the VA, or the weight he assigned to it, which was assessed since at least September 1, 2004. R. 89, 574-75. Plaintiff also argues that the consulting examiner's opinions from September 2005 also imposed more restrictive limitations than those determined by the ALJ. The Commissioner does not dispute that Plaintiff had been awarded VA disability benefits or the 100% disability rating. However, the Commissioner contends the ALJ specifically acknowledged the VA rating and he was not required to give conclusive weight to the VA rating, but was required to make a separate determination under the SSA regulations.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Because the SSA has determined that Plaintiff's date of last insured is December 31, 2005, the Court's review is focused on Plaintiff's condition between the alleged onset date of June 2004 and December 2005. *See* R. 14.

Although the regulations provide that a disability determination by another agency is not binding on the Social Security Administration (20 C.F.R. § 404.1504), the Eleventh Circuit's case law is clear that "[a]lthough the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight." *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984), (citing *Olson v. Schweiker*, 663 F.2d 593 (5th Cir. 1981) and *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)). In this case, the "treating physician" and the VA's disability rating are inextricably intertwined. The VA found Plaintiff to have a service connected disability of one-hundred percent (100%) effective August to October 2004, *i.e.*, shortly after the

alleged onset date of disability of June 2004 and well before the date of last insured of December 31, 2005. R. 89-92.

In this case, although the ALJ was required to accord great weight to the VA's disability rating, and the record contains the analysis from the VA indicating increased entitlement effective September and November 2004, the ALJ only mentioned it in the context that the VA's rating was "not the decision of the Social Security Administration which must make a determination of disability based solely on Social Security law." R. 23. Such a vague statement – rejecting a plaintiff's VA disability rating because the criteria differs from the Commissioner's without any true analysis of the basis for the VA rating – is precisely the type of a statement previously rejected in this District. *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990) (reversed and remanded for award of benefits on other issues). The Commissioner argues that, rather than finding Plaintiff disabled based on his VA rating, the ALJ instead properly gave greater weight to examining physician Dr. Glen Agans's opinion, citing R. 23, 211-13, over that of the VA physicians.

As an initial matter, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). As long as a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The VA's treatment records for Plaintiff's conditions are voluminous, supported by objective findings, reports,

and extensive testing, and the ALJ erred in rejecting them – and the disability assessment – in giving greater weight to the opinion of the one-time consulting examiner, Dr. Agans. R. 211-13.

In July 2004 (within a month of his alleged onset date), Plaintiff sought treatment from the VA for an evaluation of depression symptoms. R. 353. Dr. Gfeller indicated that the depression Plaintiff had been experiencing was "more likely than not" secondary to the chronic pain he suffered from resulting from his service connected conditions. R. 353. Plaintiff also sought treatment from the VA for the multiple problems he experienced in his back and shoulder, including resulting incontinence. R. 346. The VA doctor ordered an MRI to determine the extent of the problems in Plaintiff's back. R. 348. The August 2004 MRI revealed abnormal findings in the lumbar spine with severe degenerative disc disease with joint space narrowing at L2-3; a moderate central and left-sided protrusion with suggestion of a small extrusion at L2-3 causing moderate to severe focal canal stenosis compressing the ventral thecal sac; grade I anterior spondylolisthesis; and moderate facet joint arthropathic changes. R. 530-531.

On August 9, 2004, the VA doctor confirmed the MRI findings, and referred Plaintiff for an appointment with a neurosurgeon. R. 341. On October 25, 2004, Plaintiff returned to the VA psychiatrist, Dr. Gfeller, indicating that he was more anxious than he had previously been. R. 332. During the mental status examination, Dr. Gfeller noted that Plaintiff had a restricted affect, an anxious mood, and assessed a GAF of 55, indicative of moderate symptoms. R. 333. At the following visit with Dr. Gfeller, Plaintiff indicated that he was not doing well, and he was worried about his memory that was largely affected due to his lack of attention and concentration. R. 329. Dr. Gfeller again indicated that Plaintiff had a restricted affect, an anxious mood, and impaired memory/concentration, and diagnosed Plaintiff with Depression with a GAF of 53. R. 333.

Plaintiff was seen again on December 30, 2004 for follow-up of shoulder and back pain; he complained of medication side effects making him sleepy throughout the day. R. 326. On March

-7-

1, 2005, Dr. Gfeller noted that Plaintiff was sleeping better, about four hours a night, but Dr. Gfeller noted that tremendous amount of sleeping medications were being taken. R. 322-23. Once again, Dr. Gfeller found Plaintiff to have impaired memory/concentration. On March 30, 2005, Plaintiff underwent another psychiatric evaluation by Dr. Gfeller who again diagnosed Plaintiff with Depressive Disorder, secondary to chronic pain and impaired daily functions, and GAF of 50, indicative of serious symptoms. R. 319-20. Dr. Gfeller found Plaintiff to have a restricted affect, anxious mood, impaired recent memory, impaired intermediate memory, and poor attention and concentration. R. 320. Dr. Gfeller noted that Plaintiff was being treated with medications that "cause sedation and his insomnia remains refractory with resultant cognitive impairment in the daytime." R. 319. Attempts to switch Plaintiff to Modafinal to combat the daytime cognitive impairments were unsuccessful, and Dr. Gfeller doubled the dosage. R. 312-13.

At a physical evaluation on March 21, 2005, Dr. Cheong of the VA diagnosed Plaintiff with low back pain with degenerative changes from L2-S1, severe and left shoulder pain status post dislocation with attempted open Bankart repair with recurrent instability. R. 206-07. Since Plaintiff had an unstable shoulder, he suffered from daily dislocations of his shoulder subsequently limiting his range of motion and strength. R. 206-07. At a July 23, 2005 examination of Plaintiff's lower back, he was found to have severely limited range of motion in the cervical and lumbar spine. Lumbar spine testing revealed severe degenerative changes in the lumbar spine from L1 to S1 with L2-L3 severe joint space narrowing and "massive osteophyte formation." R. 424.

> The ALJ accurately summarized the VA doctors' assessments from March 2005:
>
> Medical records from the VA dated March 31, 2005 show the claimant reports he has dull, constant pain in his back with episodes approximately two to three times a month with acute pain. The claimant also reports numbness in his leg, and left shoulder pain. Following a physical examination and review of the medical records and radiology reports, Dr. Cheong assessed the claimant with low back pain with degenerative changes from L2 through S1, severe; and left shoulder pain status post dislocation, with attempted open Bankart repair, now with recurrent instability.

R. 21. Although the ALJ had accurately stated the March 2005 report, he made two errors in ending his analysis there. The first is that he did not discuss the VA's objective findings from the VA's "compensation and pension exam" by Dr. Burkhart conducted in July 2005, because in just four months, according to Dr. Burkhart Plaintiff's condition had "shockingly" deteriorated. *See* R. 425.

Second, the ALJ erred by selectively choosing only the "positive Waddell test" from Dr. Burkhart's Report to discount Plaintiff's credibility in spite of Dr. Burkhart's overall opinion that Plaintiff had a "rather significant and shocking worsening of his symptoms." R. 425. Although the ALJ found the medical evidence from the VA "supports the claimant's allegations of significant impairment with associated pain in his back, shoulders, and left knee," he also found that the records "failed to show greater functional limitations [than the RFC assigned by the ALJ] on or prior to the DLI." R. 21. To make this finding, the ALJ in essence discounted the VA's overall 100% disability finding – which was based in large part on the VA's July 2005 physical examination of Dr. Burkhart (R. 422-29) – by picking and choosing certain statements from Dr. Burkhart's Report to basically invalidate the doctor's overall bottomline assessment of Plaintiff's condition, which was that, in spite of doubts about Plaintiff putting forth his best effort, Plaintiff's back and shoulder conditions were disabling based on other testing and x-rays. R.90 (VA disability award citing as basis the July 23, 2005 exam).

While an ALJ may consider a positive Waddell's test[2] in assessing the credibility of subjective reports[3] about a claimant's symptoms, in this case, the ALJ took out of context and in isolation the importance of the meaning of Plaintiff's "positive Waddell test" as "evidence of symptom magnification during the physical examination." R. 21. The ALJ selectively singled out the VA

---

[2]The Waddell test is a "clinical test for patients with low back pain that can be used to indicate whether the patient is exaggerating symptoms." *Jordan v. Commissioner of Social Security*, 548 F.3d 417, 419-20 (6th Cir. 2008).

[3]*See Stroh v. Astrue,* 2010 WL 572590, *5 (D. Or. Feb. 17, 2010) (affirming ALJ's decision based on substantial evidence to discount plaintiff's credibility in light of positive Waddell's test).

doctor's description of this factor and ignored the context in which it was stated – that Plaintiff was apprehensive of increased pain precipitated with any activity, and consequently he limited his range of motion of his cervical spine. R. 423. Dr. Burkhart noted that "the patient is complaining of a significant amount of pain; however, *will not attempt the movements as he states that he knows that it is going to cause him severe problems*." R. 424 (emphasis added). Because Plaintiff was apprehensive of the pain during the testing, as described in the July 23, 2005 compensation and pension exam report, Dr. Burkhart could not determine whether Plaintiff was putting forth maximal effort in the range of motion testing (R. 422-25), but he cited the objective testing, *i.e.*, x-rays, which showed severe degenerative joint disease of the cervical spine with multiple anterior osteophytes and degenerative disc space narrowing and degenerative changes in the thoracic spine, and the differences in the examination testing such as the straight leg test (negative in March and positive in July) and flexion reductions. R. 424.

As Dr. Burkhart thoroughly explained in the examination report, after setting forth the medical history:

> The patient's range of motion is severely reduced [in cervical spine with pain at 10 degrees] and I am unable to determine that the patient is putting forth maximal effort. The pain that he describes is verbal and does not show any obvious objective signs of pain. He has a positive Waddell test with cervical compression reproducing pain in his neck. He has a positive Spurling test[4] also. He does not have any evidence of spasm. He does have evidence of painful motion as above. . . . He has increased pain with repetitive motion. He does have lack of endurance with repetitive motion. Pain is his major functional impact; however, when he has flare-ups pain is again his major functional impact. He has very little motion to begin with; therefore, there is no additional limitation to motion secondary to flare-ups.
>
> Thoracolumbar spine. The patient has forward flexion from 0 to 10 degrees today with pain from 0 to 10 degrees. Extension is from 0 to 5 degrees, pain from 0 to 5 degrees. Left lateral rotation and right lateral rotation is 0 degrees. Right lateral flexion and left flexion is 0 degrees. *Again, the patient is complaining of a significant amount of pain; however, will not attempt the movements as he states that he knows*

---

[4]A positive result in a Spurling's test suggests a diagnosis of cervical nerve root disorder. *See* American Family Physician website, www.aafp.org/afp/20000515/3079.html.

*that it is going to cause him severe problems for him [sic]*. During his flare-ups, he is additionally limited by increased pain; however, he has no functionally range of motion at this point, therefore, there is no increase in the range of motion limitations, secondary to pain. Pain is his major functional impact when it comes to the flare-ups. The patient has a positive straight leg test today.[5]

Neurological examination: The patient has decreased sensation in the L1 through S1 nerve root distributions on the left side compared to the right. He has 4 out of 5 strength in all myotones in the bilateral lower extremities. He has 2 plus deep tendon reflexes which are symmetric bilaterally. In the upper extremities, he has 4 out of 5 strength in the upper extremities in the C4-C5 through T1 nerve root distributions. He also has decreased sensation in the C6,C7, and C8 nerve root distributions on the left compared to the right. Again, this is a subjective measure of paraesthesias. Again, the patient has a positive Waddell test with pain in the lumbar spine reproduced by cervical compression.

Diagnostic Tests: X-ray examination of the cervical spine shows severe degenerative joint disease of the cervical spine with multiple anterior osteophytes and degenerative disc space narrowing. In the thoracic spine, there are also degenerative changes noted with disc space narrowing. In the lumbar spine, he has severe degenerative changes in the lumbar spine from L1 to S1 with his L2/L3 severe joint space narrowing and massive osteophyte formation. With regards to the patient's limited range of motion in the cervical, thoracic, and lumbar spines, I compared notes from the patient's C-file of 3/21/05, which is four months ago. At that point, the patient had forward flexion in the lumbar spine from 0 to 45 degrees without any pain. Further forward flexion was to 60 degrees with pain. He was able to extend from 0 to 20 degrees at that time, with pain from 10 degrees to 20 degrees. He was able to flex right and left laterally from 0 to 25 degrees without any difficulty. he was able to passively rotate from 0 to 30 degrees again, with some discomfort. He had a negative straight leg test at that time.

Diagnoses: *Given these findings, the patient has had a rather significant and shocking worsening of his symptoms since his previous exam four months ago.* Upon review of the claim folder and the patient's physical exam, the patient's cervical and thoracic degenerative arthritis is at least as likely as not caused by a result of his lumbar back service connected disability. I want to further clarify that statement by saying it is impossible to determine whether or not the patient's cervical arthritis and thoracic arthritis is related to his lumbar spine.

R. 423-25 (emphasis added). Dr. Burkhart's bottomline diagnosis was that based on the objective reports and testing he performed, Plaintiff had had "a rather significant and shocking worsening of

---

[5]A positive result in a straight leg raise test indicates that the pain may be coming from a potentially herniated disc in the low back or from irritation and inflammation around the nerves coming from the lower back. *See* http://abcnews.go.com/Health/CommonPainProblems/story?id=4047905 .

his symptoms since his previous exam four months ago." R. 423-25. Unfortunately, the ALJ only cited the less significant testing from "four months ago," *i.e.*, the March 2005 report before Plaintiff's symptoms got worse.

> Dr. Cheong's assessment just two days before Dr. Burkhart's, on July 21, 2005, was:
>
> After reviewing the patient's claims file, medical records, films, physical exam findings and history it does appear that of the two conditions [low back pain and left shoulder pain] *both have worsened* but it is the patients's low back condition which is most severe. Limiting him primarily to pain. The patients's motion is also significantly limited particularly with the episodes of this exacerbation. In addition to this it appears that he is experiencing some weakness to the left lower extremity, which may be a result of the degenerative changes in the patient's lumbar spine. In addition to this it appears that the patient has unstable shoulder despite the open Bankart repair in 1992. *Occurring on a daily basis* these dislocations can be quite uncomfortable and contribution to his apprehension, which subsequently limits his range of motion and strength.

R. 207 (copy of R. 429) (emphasis added). The ALJ's failure to consider the July 2005 reports from the VA doctors, and the "shocking worsening of symptoms" was substantial error[6].

The ALJ further compounded this substantial error of failing to mention, discuss, or analyze the July 2005 physical examination reports (from Drs. Burkhart and Cheong) by giving short shrift (and incorrectly quoting) the 100% disability rating from the VA. The ALJ's only mention was to note the existence of the rating, but with no mention of the weight it was assigned or any analysis whatsoever:

> It is noted that the claimant asserted receiving total unemployability benefits from the VA (70% psychological, 40% back, and 30% shoulder). However, 20 CFR 404.1504 provides that a decision by any other agency, governmental or non-governmental, that a person is disabled is based on that agency's own rules and is not the decision of the Social Security Administration which must make a determination of disability based solely on Social Security law.

---

[6]The Court also feels compelled to note that the ALJ's opinion as to Plaintiff's "inconsistent use of prescribed medications" failed to note Plaintiff's deterioration from March to July 2005 by citing records from July to August 2004, and failed to note Plaintiff's apprehension about taking prescribed medications which irritated his stomach and he was concerned about irritating his liver, since he had hepatitis C. R. 400 (2001), 523 (2004), 575.

-12-

R. 23. The ALJ's word choice of the word "assertion" implies that the VA award was merely Plaintiff's testimony, rather than a part of the written record in the form of a copy the VA's letter to Plaintiff, which was marked received as of April 6, 2006. R. 89-92. The ALJ's listing of the percentages awarded by the VA is incorrect. The VA's letter states it is 30% for cervical spine[7] degenerative disc disease; 40% for left leg radiculopathy; 10% for neurogenic bowel[8], all secondary to thoracolumbosacral strain with osteoarthritis. R. 90-92. Plaintiff's depressive disorder, originally assessed as 50% disabling, was increased to 70% disabling. R. 90. The ALJ's failure to correctly assess Plaintiff's VA disability rating and analyze it appropriately was substantial error.

The ALJ also compounded these failures to properly consider the VA disability rating by, as Plaintiff argues, not adequately considering the opinion of Dr. Ysern, the mental health consultative examiner, and failing to include his mental limitations in Plaintiff's RFC and the hypothetical to the VE. Dr. Ysern performed a mental status examination of Plaintiff on September 9, 2005, and noted Plaintiff to have a "very nervous demeanor," and a "disheveled appearance" with restricted affect, anxious mood, and poor concentration/memory. R. 208-10. Dr. Ysern opined that Plaintiff's "capacity for understanding is adequate, but memory, concentration, persistence and pace are poor" and Plaintiff's "[s]ocial functioning and interactions are restricted" and "[h]e would have difficulty carrying out and remembering instructions in standard work situations because of his condition" and Plaintiff's "[p]rognosis is poor." R. 210.

The only reference the ALJ gives to Dr. Ysern's opinion is when he indicates that a "[c]onsultative examination in September 2005 revealed similar findings" to the VA examination

---

[7]There is no specific mention of any change in Plaintiff's shoulder assessment, but this may not have been reassessed because Plaintiff was considered 100% service connected unemployable. *See* R. 92.

[8]The VA rating also casts doubt on the ALJ's finding that Plaintiff's incontinence was not severe. R. 17. *See* also R. 529 ("low back pain on left side radiating down left leg and intermittent loss of bowel control").

from March 2005[9] which the ALJ states in passing "recent and intermediate memory was impaired and attention and concentration were poor." R. 23. It was error for the ALJ to omit discussion of Dr. Ysern's opinion of Plaintiff's mental functional limitation – that his "capacity for understanding is adequate, *but memory, concentration, persistence and pace are poor*"; "[s]ocial functioning and interactions are restricted"; and "[h]e would have difficulty carrying out and remembering instructions in standard work situations because of his condition." R. 210. The ALJ also failed to note the VA psychiatrist's (Dr. Schenker's) opinion that Plaintiff had been suffering from depression for the past three years and was "severely disabled both socially and industrially" with "impaired daily functions. R. 427. Plaintiff was assigned GAF scores of 50 to 52 between August and December 2005. R. 422.

None of the significant mental limitations opined by Dr. Ysern is discussed specifically by the ALJ. Instead, the ALJ gave great weight to the state agency psychologist's opinion (R. 217-34) because "he provided specific reasons for his opinion based on the evidence in the case record." R. 23. The state agency non-examining physician, Dr. Weiner, opined – in contrast to Dr. Ysern – that Plaintiff was not significantly limited in the ability to understand and remember very short and simple instructions, and only moderately limited in understanding and remembering detailed instructions, carry out detailed instructions, or maintain attention and concentration for extended periods, and complete a normal work week. R. 217-18. Moreover, Dr. Weiner's three sentences and lack of reference to any specific reports[10] belies the ALJ's stated reliance on his opinion as being "specific" and "based on evidence in the case record." R. 219 (*e.g.* "The claimant seemed socially adequate."). The ALJ's failure to discuss the relevant opinions of consultative examiner, Dr. Ysern, and reliance

---

[9]The March 2005 psychological examination led to an increase in Plaintiff's assessment for disability from 50% to 70%. R. 90.

[10]It is unlikely that Dr. Weiner had the benefit of Dr. Ysern's examination transmitted on September 15, 2005 (R. 210), since Weiner's form is dated September 25, 2005. R. 221.

-14-

solely on the opinion of the non-examining physician was error; thus, the ALJ's opinion was not based on substantial evidence.

The Commissioner fails to address or contradict the specific points made about Dr. Ysern's opinion and instead argues very generically that the ALJ gave the proper weight to the opinion of the reviewing psychologist, and spends several pages vaguely discussing a change to SSA regulations from 1991 that requires ALJs to consider state agency physician findings. The Court found the analysis on this very general point to be completely unhelpful and tangential to the specific issue of evaluation of Plaintiff's mental limitations and any disabling impact.

The Commissioner does cite to Dr. Agans' opinion, however, he is a family physician, not a psychologist or psychiatrist and his only opinion concerning Plaintiff's mental capacities was that Plaintiff could do "some work related tasks involving understanding, memory, concentration, persistent, social interaction and adaptation." R. 213. Dr. Agans in fact qualifies his opinion by suggesting, "[t]he amounts of disability related to the posttraumatic stress disorder are perhaps best evaluated by a psychologist or psychiatrist," which he is not. R. 213. Moreover, Dr. Ysern, Licensed Psychologist, was asked by the state Department of Disability to assess Plaintiff for a clinical evaluation with mental status; thus, his more specialized opinion of Plaintiff's mental capacities would trump Dr. Agans' opinion on that specialty. R. 208. The ALJ failed to included the mental limitations opined by Dr. Ysern in September 2005 in either the RFC or the hypothetical to the VE. Thus, the ALJ's finding was not based on substantial evidence.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is inconsistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reconsider his decision in light of Dr. Burkhart's **complete** July

2005 Report and objective findings (understanding the positive Waddell test in the context described by the Court herein), giving the VA disability rating and findings appropriate weight, and Dr. Ysern's opinions of Plaintiff's mental limitations, as set forth herein. The Clerk of the Court is **DIRECTED** to enter judgment consistent with this opinion and thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 21, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record